NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1400-14T1

ANDRE de GARMEAUX and
PAULA KUGLER,

     Plaintiffs-Appellants/
     Cross-Respondents,

v.

DNV CONCEPTS, INC. t/a THE
BRIGHT ACRE,

     Defendant-Respondent/
     Cross-Appellant,

and

PROFESSIONAL FIREPLACE SERVICES,
JAMES RISA, and ROBERT ROCCO
individually and trading as D's
HANDS TO SERVE,

     Defendants.

---

> **APPROVED FOR PUBLICATION**
>
> **December 20, 2016**
>
> **APPELLATE DIVISION**

Argued September 14, 2016 — Decided December 20, 2016

Before Judges Alvarez, Accurso and Manahan.

On appeal from Superior Court of New Jersey,
Law Division, Monmouth County, Docket No. L-
5513-11.

Susan E. DiMaria argued the cause for
appellants/cross-respondents (O'Malley,
Surman & Michelini, attorneys; Ms. DiMaria,
on the briefs).

Ronald L. Lueddeke argued the cause for
respondent/cross-appellant (Lueddeke Law

Firm, attorneys; Mr. Lueddeke, of counsel,
Karri Lueddeke, on the brief).

The opinion of the court was delivered by

MANAHAN, J.A.D.

In this case of first impression, we are called upon to determine, among other arguments, whether prevailing plaintiffs in a Consumer Fraud Act (CFA) action are entitled to attorney's fees incurred in defense of a counterclaim. As we conclude that the defense of the counterclaim was inextricably intertwined with the defense of the CFA claim, consideration by the trial court of the attorney's fees incurred by plaintiffs for that purpose was proper.

Andre de Garmeaux and Paula Kugler (collectively plaintiffs) appeal from a September 30, 2014 order reducing the award of attorney's fees in their successful prosecution of a CFA claim from $70,911.12 to $20,000. On December 11, 2014, defendant DNV Concepts Inc., t/a The Bright Acre (Bright Acre), cross-appealed the trial court's denial of a judgment notwithstanding a verdict and the entire award of attorney's fees. For the reasons stated below, we reverse the trial court's decision on the quantum of the counsel fee award and affirm the decision on the denial of defendant's judgment notwithstanding the verdict.

We discern the following facts culled from the trial record, as essential to our determination. Plaintiffs visited Bright Acre

in early 2010 for the purpose of replacing their gas fireplace which had been damaged in a storm. Bright Acre's store manager, Patricia Van Ness, agreed to assist plaintiffs with the process of replacing the fireplace and submitting an insurance claim. Plaintiffs testified that during one of several visits, Van Ness introduced defendant James Risa as "your installer Jim." Risa was employed by Bright Acre as an operations manager, and had worked at Bright Acre for approximately twenty years. Additionally, Risa owned and operated an independent company, Professional Fireplace Services. According to Bright Acre's owner, Darryl Dworkin, installation work was referred to its own employees who owned installation service companies, giving a customer one installer's name per purchase. During the timeframe plaintiffs purchased their fireplace, Risa received most, if not all, of the installation referrals from Bright Acre.

On March 31, 2010, Risa emailed plaintiffs a $3700 estimate for installation services. Plaintiffs agreed to the price and on June 4, 2010, Van Ness submitted approximately four fireplace estimates to the insurance company. A sales order in the amount of $2450 was placed on August 24, 2010. Plaintiffs wrote a check to Bright Acre for that amount that same day.

In September 2010, plaintiffs wrote a check to Professional Fireplace Services for the first installment on the $3700

3

installation cost.  On October 26, 2010, a construction permit was issued for the installation, and the new fireplace was delivered shortly thereafter.  Risa dismantled the existing fireplace and stored the new fireplace in plaintiffs' family room.

Plaintiffs became dissatisfied with Risa, noting he kept an unpredictable schedule, working a couple of hours at a time mixed with stretches of days of complete absence.  Plaintiffs contacted Van Ness, in her capacity as Risa's boss, about Risa's schedule and requested she speak with Risa about completing the job.

Additionally, Risa's workmanship was unsatisfactory to plaintiffs.  Specifically, the grout around the stone mantel was sloppy, some bricks were uneven, and metal wiring was exposed. Risa attempted to correct the work, however, the installation did not meet plaintiffs' standards.  In December 2010, plaintiffs alleged they became aware that Risa was not directly working for Bright Acre, rather he was working in the capacity as owner of Professional Fireplace Services.  Plaintiffs contacted Bright Acre to resolve the installation issues.  After receiving no response from Bright Acre, plaintiffs hired another contractor to complete the installation.

In November 2011, plaintiffs filed a civil complaint against Bright Acre.  The seven-count complaint alleged several causes of action, among them, a violation of the New Jersey CFA, N.J.S.A.

4

56:8-1 to 198. Bright Acre filed an answer and thereafter, an amended answer which included a counterclaim. The counterclaim sought damages from plaintiffs for fraudulent concealment or alteration of evidence, for defamation, and for filing a frivolous lawsuit.

The predicate for the fraudulent concealment or alteration of evidence claim was the disparity in the form of the installation quote from Risa to plaintiffs relating to the existence of a masthead. In the form provided by plaintiffs in discovery, the quote did not reference a business masthead. During de Garmeaux's deposition, Bright Acre's counsel produced an email dated March 31, 2010, which attached a form of the Risa quote that referenced "Professional Fireplace Services" in its masthead. This invoice was acknowledged by de Garmeaux as received from Risa. Kugler also acknowledged receipt of this invoice during her trial testimony. Notwithstanding their acknowledgment, both de Garmeaux and Kugler denied altering the document.

The trial was conducted over five days before a jury. At the conclusion of the proofs by the parties, Bright Acre moved for a directed verdict on plaintiffs' CFA claim and its fraudulent alteration claim. Both motions were denied.

Prior to deliberations, due to the number of claims and parties, the trial court provided jurors with a verdict sheet

which instructed them to respond to the questions on the sheet sequentially. The jury returned a verdict in favor of plaintiffs. Specifically, the jury found that Bright Acre, Professional Fireplace Services, and Risa were negligent and were the proximate cause of plaintiffs' damages. Additionally, the jury found that Bright Acre, Professional Fireplace Services, and Risa committed an act of omission of consumer fraud that proximately led to plaintiffs' damages. Professional Fireplace Services, Risa, Robert Rocco, and D's Hands to Serve were found to have violated provisions of the New Jersey Home Improvement Practices Act (Home Improvement Act).[1] Plaintiffs were awarded $4790 on the negligence claim, holding Bright Acre 30% liable, and Risa, together with Professional Fireplace Services, 70% liable. Plaintiffs were awarded $1500 on the CFA and Home Improvement Act claims; $500 attributable to Bright Acre and $1000 attributable to Risa and Professional Fireplace Services. The jury found no cause for action on the counterclaim.

As a result of the verdict, plaintiffs' counsel filed an "Affidavit of Attorney Services" along with a form of judgment. Thereafter, plaintiffs' counsel filed a supplemental certification relating to the counsel fee request which sought the payment of

---

[1] Defendants Risa, Professional Fireplace Services, Rocco, and D's Hands to Serve defaulted and did not participate in the trial.

$70,911.12. Without hearing argument on the issue, the trial court entered judgment in favor of plaintiffs, awarding $20,000 to plaintiffs' counsel as reasonable attorney's fees.

The trial court attached a statement of reasons to the September 30, 2014 order. In reaching the determination of the fees, the trial court included fees generated in defense of the counterclaim; finding the counterclaim related to "the transaction that gave rise to plaintiffs' affirmative claims." The trial court also provided the bases for the quantum award.

On November 17, 2014, plaintiffs filed a notice of appeal. On December 11, 2014, Bright Acre filed a notice of cross-appeal.

Plaintiffs raise the following points on appeal:

<u>POINT I</u>

THE TRIAL COURT ERRED IN REDUCING THE ATTORNEY['] S FEES TO A FLAT AMOUNT BASED IN PART ON THE AMOUNT OF THE DAMAGES AWARDED ON THE CONSUMER FRAUD ACT CLAIM AS THERE IS NO PROPORTIONALITY REQUIREMENT BETWEEN THE QUANTUM OF DAMAGES AND THE AMOUNT OF THE FEES.

<u>POINT II</u>

THE FEE AWARD DID NOT COMPORT WITH THE LEGISLATIVE INTENT OF THE NEW JERSEY CONSUMER FRAUD ACT, <u>N.J.S.A.</u> 56:8-1 [to -198], TO GIVE CONSUMERS ACCESS TO THE COURT SYSTEM, ENCOURAGE COUNSEL TO TAKE ON CONSUMER FRAUD CLAIMS AND PUNISH DEFENDANTS WHO HAVE DEFRAUDED CONSUMERS.

A reviewing court should not set aside an award of attorneys' fees except "on the rarest occasions, and then only because of a

clear abuse of discretion." Rendine v. Pantzer, 141 N.J. 292, 317 (1995). Where the lower court's determination of fees was based on irrelevant or inappropriate factors, or amounts to a clear error in judgment, the reviewing court should intervene. Masone v. Levine, 382 N.J. Super. 181, 193 (App. Div. 2005) (citing Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002)).

Fee shifting is permitted statutorily by the CFA. N.J.S.A. 56:8-19. Our Supreme Court has noted that the CFA's fee-shifting provision advances the statute's policy of ensuring that plaintiffs with bona fide claims are able to find lawyers to represent them and encourages counsel to take on private cases involving an infringement of statutory rights. Coleman v. Fiore Bros., Inc., 113 N.J. 594, 598 (1989).

However, where a party presents "distinctly different claims for relief" in one lawsuit, work on those non-CFA claims are not counted against a defendant. Silva v. Autos of Amboy, Inc., 267 N.J. Super. 546, 556 (App. Div. 1993) (quoting Hensley v. Eckerhart, 461 U.S. 424, 435, 103 S Ct. 1933, 1940, 76 L. Ed. 2d 40, 51 (1983)). A court may shift fees on the CFA claim or claims that involve the common core of CFA-related facts. See ibid. Such a suit should not be viewed as a series of discrete claims, rather the attorneys' fees related to the common core of CFA-related work

may be considered by a court when calculating the award. See ibid.

We are informed in our analysis by a decision reached in another jurisdiction which allowed for an award of counsel fees incurred in the defense of counterclaims relative to Wisconsin's unfair trade statute. See Benkoski v. Flood, 626 N.W.2d 851, 862 (Wis. Ct. App. 2001); See also Benkoski v. Flood, 599 N.W.2d 885 (Wis. Ct. App. 1999). That state's unfair trade statute, like the CFA, is remedial in nature, and provides for fee shifting to a successful litigant. Wis. Stat. § 100.20(5) (2016). In Benkoski, supra, 626 N.W.2d at 862, the Wisconsin Appeals Court held that a trial court properly exercised its discretion in awarding a plaintiff attorneys' fees incurred in defense of defendant's counterclaims. We recite the factual and procedural history of Benkoski relevant to our analysis.

Benkoski arose from a dispute over a commercial lease. Benkoski, supra, 599 N.W.2d at 886. Defendant, Flood, leased lots in a mobile home park to Benkoski who, in turn, leased the mobile homes he owned on the lots to third parties. Id. at 887. The lease provided that Benkoski could not sublet the sites unless prior approval had been granted by Flood. Ibid. Flood later added an additional condition requiring that any purchaser of a mobile home owned by Benkoski would have to remove the home at the

end of the lease.  Ibid.  When Benkoski attempted to sell one of the mobile homes, Flood refused to approve the application for tenancy because Benkoski would not agree to the removal condition. Ibid.

In his complaint, Benkoski alleged that Flood's conduct violated Wisconsin's Unfair Trade Practices Act (the Act).  Wis. Stat. § 100.20 (2016); Wis. Stat. § 710.15 (2016); Wis. Admin. Code ATCP § 125.06 (2016); Benkoski, supra, 599 N.W.2d at 887. Flood filed a counterclaim, premised on Benkoski's agreement to discontinue subletting and to remove the mobile homes as they became vacant.  Benkoski, supra, 599 N.W.2d at 887.  Benkoski moved for partial summary judgment dismissing the counterclaim. Ibid.  Flood cross-moved for dismissal of the complaint for failure to state a claim.  Ibid.  The trial court granted Benkoski's motion and dismissed the counterclaim.  Ibid.  The court denied outright dismissal of the complaint, holding that Benkoski as an operator, not a resident, could seek an injunction, but could not claim money damages under the Act.  Id. at 888.  Benkoski appealed and Flood cross-appealed.  Ibid.

The appeals court held Benkoski was both a resident and a tenant, was entitled to relief under the Act, and that Flood violated the Act entitling Benkoski to damages.  Benkoski, supra, 599 N.W.2d at 893.  The matter was remanded for further proceedings

to determine the amount of damages.  <u>Ibid</u>.  Subsequent to the remand, the trial court awarded pecuniary damages, as well as counsel fees and costs incurred by Benkoski in defense of the counterclaim.  <u>Benkoski</u>, <u>supra</u>, 626 <u>N.W.</u>2d at 854.  Flood appealed. <u>Ibid.</u>

The appeals court found as to the award of counsel fees and costs that the relief sought by the counterclaim was the "very crux" of Benkoski's claims of an unfair trade practice by Flood and that the competing claims were "inextricably caught up with each other."  <u>Id.</u> at 862.  As such, the appeals court concluded that the trial court did not erroneously exercise its discretion in awarding Benkoski his counsel fees incurred in defense of Flood's counterclaim.  <u>Ibid.</u>

Here, in reaching its determination to award counsel fees, the trial court held:

> In determining that $20,000 is a reasonable award of attorney fees, the [c]ourt was guided by <u>R.</u> 4:42-9 which references factors enumerated under [<u>Rules of Professional Conduct</u> 1.5(a)].  The attorney principally responsible for the handling of the matter on behalf of [p]laintiffs, Susan DiMaria, was admitted to the bar in 1987, and, thus, brought over twenty[-]five years' experience to this matter.  The [c]ourt viewed Ms. DiMaria's hourly rate of $200 per hour as reasonable given her level of experience.  The gravamen of [p]laintiffs' claim sounded in consumer fraud involving multiple parties; and while consumer fraud is hardly a novel issue, its successful prosecution generally requires

> a heightened level of skill and attention especially where, as here, a vigorous defense was marshalled against the claim by experienced counsel for the defense. The [c]ourt acknowledges that its $20,000 award substantially discounts the requested amount of $70,911.12. However, the [c]ourt, having reviewed the invoices, determined to exclude from its calculation the many entries reflecting intra-office consultation and communications with other attorneys in the firm as well as what the [c]ourt deemed to be excessive time spent on reviewing and responding to correspondence. The [c]ourt also factored into its award the amount the jury ultimately awarded [p]laintiffs, particularly as to their consumer fraud claim.

Plaintiffs' CFA claim was premised on a fraudulent omission. Plaintiffs averred they were never advised by Bright Acre that the installation performed by Risa would be in his capacity as owner of Professional Fireplace Services; not as its employee. In defending this claim and in prosecuting its counterclaim, Bright Acre proffered the two invoices; one with and one without the Professional Fireplace Services masthead. These "conflicting" invoices were the lynchpin of Bright Acre's defense intended to demonstrate that plaintiffs were aware of Risa's employment capacity for purpose of the installation. Bright Acre's fraudulent alteration counterclaim was premised upon an alleged alteration by plaintiffs of the same invoice.

The CFA is a remedial statute which encourages its use by, among other things, reasonably compensating those who prevail

12

through fee shifting. <u>Coleman</u>, <u>supra</u>, at 552. Consistent with the CFA's intent and in adopting the analysis of <u>Benkoski</u>, we hold that Bright Acre's utilization of the invoices for the dual purpose of both shield and sword rendered counsel fees incurred by plaintiffs in response thereto compensable as both "inextricably caught up with" and related to the common core of the CFA claim. <u>Silva</u>, <u>supra</u>, 267 <u>N.J. Super.</u> at 556; <u>Benkoski</u>, <u>supra</u>, 626 <u>N.W.</u>2d at 862.

Having reached this determination, we next turn to the quantum of the fees awarded; which both parties argue was in error. New Jersey generally follows the "American Rule," which requires that each party pay its own legal costs. <u>Rendine</u>, <u>supra</u>, 141 <u>N.J.</u> at 322. Fees may be shifted when permitted by statute, court rule, or contract. <u>Packard-Bamberger & Co. v. Collier</u>, 167 <u>N.J.</u> 427, 440 (2001). Regardless of the source authorizing fee shifting, the same reasonableness test governs. <u>Litton Indus., Inc. v. IMO Indus., Inc.</u>, 200 <u>N.J.</u> 372, 386 (2009).

When fee shifting is permissible, a court must ascertain the "lodestar"; that is, the "number of hours reasonably expended by the successful party's counsel in the litigation, multiplied by a reasonable hourly rate." <u>Id</u>. (citing <u>Furst v. Einstein Moomjy, Inc.</u>, 182 <u>N.J.</u> 1, 22 (2004)). To compute the lodestar, the trial court must first determine the reasonableness of the hourly rates

charged by the successful party's attorney in comparison to rates "for similar services by lawyers of reasonably comparable skill, experience and reputation" in the community. Rendine, supra, 141 N.J. at 337 (quoting Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990)). After evaluating the hourly rate, the trial court must then determine the reasonableness of the hours expended on the case. Furst, supra, 182 N.J. at 22. "Whether the hours the prevailing attorney devoted to any part of a case are excessive ultimately requires a consideration of what is reasonable under the circumstances" and should be informed by the degree of success achieved by the prevailing party. Id. at 22-23. The award need not be proportionate to the damages recovered. Id. at 23.

Rules of Professional Conduct (RPC) 1.5(a), requires that "[a] lawyer's fee shall be reasonable in all cases, not just fee-shifting cases[.]" Id. at 21-22. In determining reasonableness, RPC 1.5(a) requires courts to consider:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;

14

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services;

(8) whether the fee is fixed or contingent.

In reviewing the trial court's methodology for an award of fees, we are guided by our Supreme Court's declaration that "there is no precise formula . . . [and that t]he ultimate goal is to approve a reasonable attorney's fee that is not excessive." Litton, supra, 200 N.J. at 388.

The issue of reasonableness of counsel fees has been the subject of numerous decisions. Our Supreme Court has provided direction to trial courts faced with determining the amount of an award a litigant is entitled to receive.

> [I]t is incumbent on the trial court to "analyze the [relevant] factors in determining an award of reasonable counsel fees and then must state its reasons on the record for awarding a particular fee."
>
> [R.M. v. Supreme Court of N.J., 190 N.J. 1, 12 (2007) (quoting Furst, supra, 182 N.J. at 21) (alteration in original).

The Court has also noted that when considering the reasonableness of counsel fees in conjunction with a fee-shifting statute, the trial court's obligation to carefully review the

15                                                    A-1400-14T1

lodestar fee request is heightened. Szczepanski v. Newcomb Med. Ctr. Inc., 141 N.J. 346, 366 (1995). The trial court's evaluation must include "not only the damages prospectively recoverable and actually recovered, but also the interest to be vindicated . . . as well as any circumstances incidental to the litigation that directly or indirectly affected the extent of counsel's efforts." Id. at 366-67.

Here, the trial court employed proportionality as a factor in arriving at the counsel fee award. In Szczepanski, our Supreme Court explicitly rejected a proportionality requirement between damages recovered and the attorney fee award, although noting the degree of success obtained remains an important factor. Id. at 366. We add that the level of success achieved should also be measured, in appropriate circumstances, by other means; such as here by plaintiffs' attainment of a favorable outcome in defending the counterclaim. Other than what was a proper consideration by the trial court of counsel fees incurred in defending the counterclaim, the trial court did not employ that "success" in determining an appropriate fee award.[2]

Further, since it was not referenced in the statement of reasons, we are unable to conclude that the trial court considered

[2] We intend no criticism of the trial court as, by our decision, we have addressed an additional factor in crafting an appropriate fee award.

the public policy of the CFA for fee-shifting; deterrence of fraudulent conduct, and encouragement of counsel to undertake representation of plaintiffs. Furst, supra,182 N.J. at 21. When fee-shifting is permitted, the public policy of the enabling statute is a relevant factor to be considered in conjunction with the factors enumerated in RPC 1.5(a) in determining the award. In addition to the "interests to be vindicated," a trial court must further determine whether the time expended in pursuit of those interests along with the "underlying statutory objectives" and recoverable damages is equivalent to the time "competent counsel reasonably would have expended to achieve a comparable result. . . ." Id. at 22 (citing Rendine, supra, 141 N.J. at 336). Because the trial court neither specifically addressed the CFA's public policy nor considered plaintiffs' full "measure of success" as factors in the award, we are constrained to remand for reconsideration of the counsel fee award.

In reaching our determination, we recognize that a trial court's determination of an appropriate counsel fee award in CFA fee-shifting cases is premised upon fact-sensitive scenarios. We also recognize that there is no "precise formula" that uniformly produces a reasonable counsel fee award. Litton, supra, 200 N.J. at 388. There is, however, ample guidance for the determination provided by the public policy providing for fee-shifting, by

17

precedential case law and by the RPC. Through the trial court's resort to that guidance, it is likely that the resultant award will serve the CFA's legislative policy of access to the courts, even in the face of an aggressively litigated counterclaim which might otherwise deter CFA litigants and their lawyers from pursuing a statutory remedy, while offering the prevailing litigant only those counsel fees reasonably expended to obtain the result.

Finally, we address the arguments raised by Bright Acre on its cross-appeal:

POINT I

THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR A JUDGMENT NOTWITHSTANDING THE VERDICT ON ITS FRAUDULENT ALTERATION CLAIM.

[A.] THE TRIAL COURT'S SOLE BASIS FOR DENYING [BRIGHT ACRE'S] MOTION FOR JUDGMENT AT TRIAL WAS PAULA KUGLER'S PERJURED TESTIMONY.

[B.] THE JUDGMENT OF THE TRIAL COURT FINDING NO CAUSE OF ACTION ON DEFENDANT'S COUNTERCLAIM SHOULD BE VACATED AS IT BASED UPON PLAINTIFF'S PERJURED TESTIMONY.

[C.] PLAINTIFFS' OWN PRIOR CERTIFIED STATEMENTS IN THIS ACTION INDICATE THAT PLAINTIFFS PERJURED THEMSELVES DURING THE TRIAL.

POINT II

DEFENDANT [BRIGHT ACRE] IS ENTITLED TO A NEW TRIAL BASED UPON THE EXTREME BREVITY OF THE JURY DELIBERATION.

POINT III

THE TRIAL COURT ERRED IN ENTERING JUDGMENT
AGAINST DEFENDANT [BRIGHT ACRE] ON PLAINTIFFS'
CFA CLAIM BY ACTS OF OMISSION.

POINT IV

DEFENDANT [BRIGHT ACRE] IS ENTITLED TO A NEW
TRIAL BASED UPON PLAINTIFFS' COUNSEL[']S
SUMMATION. (POINT NOT RAISED BELOW)

POINT V

DEFENDANT'S LEGAL BRIEF IN OPPOSITION TO
PLAINTIFF[S'] APPEAL.

> A. LEGAL STANDARD TO BE APPLIED TO
> THE INSTANT FEE APPLICATION.
>
> B. THE ATTORNEY FEE AWARD OF $20,000
> SHOULD BE DECREASED OR NEGATED FOR
> THE FOLLOWING REASONS.

We have considered these arguments in light of the record and controlling principles of law and have determined, with the exception of that addressed below, they are without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

The standard for reviewing a motion for judgment notwithstanding the verdict is whether the evidence, together with the legitimate inferences therefrom, could sustain a judgment in favor of the party opposing the motion. Sons of Thunder v. Borden, Inc., 148 N.J. 396, 415 (1997).  In other words, if, accepting as true all the evidence which supports the position of the nonmoving

19

A-1400-14T1

party, reasonable minds could differ, the motion must be denied. Ibid. This standard applies to any reviewing tribunal, and ensures the appellate court does not overstep its bounds by usurping the jury's task of assessing witness credibility. Ibid. This standard ensures that the jury's factual determinations will only be disturbed if that jury could not have reasonably used the evidence to reach its verdict. Ibid.

Bright Acre argues that the denial of its motion for judgment notwithstanding the verdict was erroneous. Its argument is premised upon the contention that Kugler committed perjury by her testimony relating to the alteration of the invoices. Bright Acre raised this argument during the trial. Counsel for Bright Acre made Kugler's lack of credibility a prominent and recurring theme during his cross-examination of her as well as in his opening and closing arguments. Further, the facially disparate invoices were admitted in evidence and presumably considered by the jury in its deliberations.[3]

The plain conclusion to be drawn by the jury's verdict was that it rejected Bright Acre's lack of credibility argument and found Kugler to be credible. Given the above, the court's

---

[3] Bright Acre has not raised the jury instructions as a point of error. Notwithstanding, from our review of the instructions contained in the record, we are satisfied the jury was properly instructed by the court regarding credibility.

determination to deny the motion was firmly grounded in the record and was not erroneous.

Affirmed in part, reversed in part, and remanded for proceedings consistent with our decision. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION