**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0669-23

AHMET DERYA,

    Plaintiff-Appellant,

v.

SEDEF GULSAN,

    Defendant-Respondent.

_____

> Argued February 12, 2025 – Decided June 16, 2025
>
> Before Judges Sumners and Susswein.
>
> On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-1265-20.
>
> Crew Shielke argued the cause for appellant (Onal Gallant & Partners, attorneys; Crew Shielke, of counsel and on the briefs).
>
> Paul Sheehan argued the cause for respondent (Hill Wallack, LLP, attorneys; Paul Sheehan, of counsel and on the brief).

PER CURIAM

This case arises from a partnership dispute between plaintiff Ahmet Derya and defendant Sedef Gulsan. The partnership agreement formed SG Health, LLC (SG Health) d/b/a Viva Pharmacy (Viva). After the parties sold Viva to CVS Pharmacy in 2019, plaintiff sued defendant, alleging that defendant mismanaged the business accounts, improperly took a salary in violation of their formal "Limited Liability Company Operating Agreement SG Health LLC" agreement (Operating Agreement), improperly used Viva's funds for personal use, improperly conflated her personal expenses and/or misattributed plaintiff's business expenses as personal expenses, and failed to pay plaintiff his share of the 2016 business profits.

Following a three-day trial, the jury found in defendant's favor. Plaintiff appeals from an October 6, 2023 Law Division order denying his motion for either a judgment notwithstanding the verdict (JNOV) pursuant to Rule 4:40-2, or for a new trial pursuant to Rule 4:49-1. Plaintiff also appeals from the trial court's decision awarding attorney fees and costs to defendant.

After considering the record in light of the parties' arguments and governing legal principles, we affirm most of the trial court's well-reasoned ruling upholding the jury verdict. However, defendant concedes there were two expenses that were wrongly attributed to plaintiff, one regarding approximately

2

$6,200 for car loan payments and another for about $4,000 for car insurance payments. Although these sums are minor compared to the total damages that plaintiff[1] claimed—and that the jury rejected—we are constrained to remand to the trial court to rectify the verdict with respect to these two payments. In all other respects, we affirm the trial court's ruling upholding the jury verdict. Because the two car-related payments might conceivably impact the award of attorney fees and costs, we also remand for the trial court to reconsider the fee award in light of defendant's concession regarding these payments.

I.

We presume the parties are familiar with the relevant facts and procedural history, which we need only briefly summarize. In early 2016, plaintiff purchased a forty-nine percent share of Viva from defendant in exchange for a $100,000 investment in the business. The parties did not enter into the Operating Agreement until January 2017. Pursuant to the Operating Agreement, defendant was Viva's managing member and in charge of its employees and finances. The Operating Agreement prohibited the parties from receiving salaries for their role as LLC members unless they both agreed otherwise in

---

[1] To provide context, we note that plaintiff claimed defendant's accounting errors deprived him of approximately $420,000.

writing. As a licensed pharmacist, defendant also acted as Viva's head pharmacist, a role not mentioned in the Operating Agreement. Defendant paid herself an hourly salary for her work as the head pharmacist, which plaintiff claimed was done without his knowledge and that, had he known, he would not have consented. At some point, the parties verbally agreed that plaintiff would receive weekly payments of $1,000.

The parties maintained a business bank account for Viva, which they both used for personal expenses. Plaintiff also took out three personal credit cards in the parties' names, which were used for personal and business expenses and was paid off using the business account. The parties sold Viva to CVS Pharmacy in 2019, and defendant subsequently opened a new pharmacy without plaintiff.

On July 16, 2020, plaintiff filed a six-count complaint against defendant, alleging that she mismanaged and defrauded him in managing SG Health and Viva. Plaintiff alleged, for example, that defendant withheld his fair share of profit distributions, did not maintain a proper accounting of the business, used company funds for her personal benefit, paid herself "excessive and unjustified salaries," and opened a competing pharmacy, in violation of their non-compete clause. Plaintiff further alleged that these violations constitute a breach of the duty of loyalty (count one), breach of the duty of care (count two), common law

4

fraud (count three), unjust enrichment (count four), and breach of contract (count five), entitling him to punitive damages (count six).

On September 2, 2020, defendant moved to dismiss count three of plaintiff's complaint alleging fraud. The motion judge denied this application on September 25.

In October 2020, defendant filed a counterclaim, alleging that plaintiff failed to obtain his pharmacist license, as expected under the Operating Agreement, and did not engage in any work on behalf of the pharmacy yet still took regular distributions from the pharmacy for his personal use. Defendant alleged that this constituted a breach of contract and a violation of the New Jersey Limited Liability Company Act, N.J.S.A. 42:2C-1.

In December 2021, plaintiff filed an amended complaint to add claims of: dissolution pursuant to N.J.S.A. 42:2C-48 (count six)[2]; personal liability against defendant under N.J.S.A. 42:2C-39 (count seven); conversion (count eight); breach of implied covenant of good faith and fair dealing (count nine); promissory estoppel (count ten); tortious interference with prospective economic advantage (count eleven); and negligence (count twelve). Plaintiff

---

[2] Plaintiff's amended complaint did not include a separate count of punitive damages, formerly count six of the initial complaint, but includes in it other requested relief.

A-0669-23

also requested that the court enter a declaratory judgment in his favor (count thirteen).

Defendant asserted thirty-five affirmative defenses, including failure to state a cause of action, the claim was time barred, doctrine of unclean hands, comparative negligence, and laches.

The jury trial was held in late July 2023. Prior to summations, plaintiff agreed to dismiss counts four (unjust enrichment), eight (conversion), ten (promissory estoppel), and twelve (negligence) based on defendant's stipulation that the Operating Agreement was a valid and operating contract. The jury returned a verdict in defendant's favor on the remaining counts.

On August 14, 2023, plaintiff moved for JNOV or, in the alternative, for a new trial pursuant to Rules 4:40-2 and 4:49-1. On August 22, defendant filed for attorney fees and costs against plaintiff. On October 6, the trial court denied plaintiff's motion for JNOV or a new trial.

On November 1, 2023, defendant filed a notice of appeal from the jury's verdict and the trial court's October 6, 2023 decision. On February 12, 2024, we temporarily remanded the matter to the trial court for a determination on defendant's fee application. Pursuant to our remand order, on March 11, the trial court granted defendant's request for attorney fees in the amount of $119,256.40.

Plaintiff now argues on appeal that the trial court erred in denying his motion for JNOV or a new trial, arguing that there was sufficient evidence to support his claims and that the verdict in defendant's favor constitutes a miscarriage of justice. He also contends that the court erred in granting defendant attorney fees, arguing defendant was not a "prevailing party" under the Operating Agreement. At the very least, he argues, the fees should be reduced to deduct any fees associated with the motions that defendant lost and to omit the fees for awards that were not properly supported.

## II.

We begin our analysis by acknowledging the foundational legal principles governing this appeal. Under Rule 4:40-2, a JNOV "cannot be entered unless a motion for judgment or its equivalent has been made during trial." Velazquez ex rel. Velazquez v. Jiminez, 336 N.J. Super. 10, 33 (App. Div. 2000) (citing Surkis v. Strelecki, 114 N.J. Super. 595, 599-00 (App. Div. 1971); Pressler & Verniero, Current N.J. Court Rules, cmt. on R. 4:40-1 & -2 (2000)); see also Sun Source, Inc. v. Kuczkir, 260 N.J. Super. 256, 368 (App. Div. 1992) (holding that the defendant was "procedurally barred" from moving for JNOV because he "failed to move for judgment prior to the jury's verdict").

A-0669-23

When reviewing a decision on a motion for JNOV pursuant to Rule 4:40-2, we apply the same standard that governs the trial courts. Conforti v. Cnty. of Ocean, 255 N.J. 142, 163 (2023) (citing Smith v. Millville Rescue Squad, 225 N.J. 373, 397 (2016)). We thus consider "whether the evidence presented at trial, together with the legitimate inferences therefrom, could sustain a judgment in . . . favor of the party that prevailed at trial." Id. at 162 (internal quotation marks omitted) (quoting Sons of Thunder, Inc. v. Borden, Inc., 148 N.J. 396, 415 (1997)). Our review is said to be "mechanical," without an attempt "to discern how the jury reached its verdict or what evidence the jury credited versus what evidence it discounted." Id. at 163, 171. Rather, "a motion for JNOV may only be granted where no rational juror could conclude that the plaintiff marshaled sufficient evidence to satisfy each prima facie element of a cause of action." Id. at 162-63 (internal quotation marks omitted) (quoting Smith, 225 N.J. at 397).

When reviewing a motion for a new trial pursuant to Rule 4:49-1, we also apply the same standard that governs the trial courts. Risko v. Thompson Muller Auto. Grp., Inc., 206 N.J. 506, 522 (2011). Under this standard, the jury's verdict only will be disturbed if "it clearly and convincingly appears that there was a miscarriage of justice under the law." R. 4:49-1(a). "A jury verdict is

entitled to considerable deference," Risko, 206 N.J. at 521, thus such a motion should only be granted if the outcome is "shocking to the conscience of the court," ibid. (quoting Kulbacki v. Sobchinsky, 38 N.J. 435, 456 (1962)). A miscarriage of justice occurs where there is a "manifest lack of inherently credible evidence to support the finding, obvious overlooking or undervaluation of crucial evidence, [or] a clearly unjust result." Id. at 521 (alteration in original) (quoting Lindenmuth v. Holden, 296 N.J. Super. 42, 48 (App. Div. 1996)).

A.

We next apply these legal principles to the present facts. Plaintiff contends there were clear proofs that defendant breached the Operating Agreement by incorrectly calculating both parties' personal expenses, withholding profits, paying herself a salary, using company funds to make personal loans, and violating the non-complete clause. Thus, he argues, he was entitled to JNOV or a new trial.

We are unpersuaded. For one thing, plaintiff's application for JNOV was procedurally deficient. The trial court correctly noted that to prevail on a motion for JNOV, the movant must first make "the equivalent of . . . a trial motion." Plaintiff's motion, however, was not filed until after the jury had rendered its verdict. Where, as is here, a party does not move for judgment either at the close

9

of their evidence or at the close of all the evidence, JNOV is inappropriate. Velazquez, 336 N.J. Super. at 33-34; see also Rule 4:40-2.

But even putting the procedural deficiency aside, we generally agree with the trial court's conclusion that there was sufficient evidence to support the jury's verdict in defendant's favor so that the verdict did not constitute a miscarriage of justice. As the trial court aptly noted, the standard for a motion for a new trial is "very high," and the court cannot "sit as . . . the eighth juror in this matter." The court recognized that the question before it was not whether it would have reached the same decision, but rather whether the verdict "was so against the weight of the evidence such that no reasonable jury could come to this conclusion." The court added that it could not make any credibility determinations, as that was the function of the jury, and that in this case, the question was "difficult" given the parties' "fast and loose" operation of their business, involving "a lot of informality on both sides."

The trial court noted, for example, that plaintiff admitted that the parties had agreed they could use business credit cards for personal use and that they would later sort the accounting. Thus, the trial court reasoned, if defendant's conduct violated the Operating Agreement, then so did plaintiff's, even if to a lesser degree. See, e.g., Borough of Princeton v. Mercer Cnty., 169 N.J. 135,

158 (2001) (referencing the doctrine of "unclean hands," which is "the equitable principle that a court should not grant relief to one who is a wrongdoer with respect to the subject matter in suit" (quoting Faustin v. Lewis, 85 N.J. 507, 511 (1981))).

Further, the trial court found the record "corroborate[d]" defendant's claim about her responsibilities and that she would not have entered into the agreement if she did not receive a separate pharmacist salary. The court also commented on the conflicting "testimony on both sides with respect to access to the books," and concluded that there was "sufficient evidence" for the jury to determine who they believed. The court stressed the "informality on both sides with respect to the bookkeeping" and both parties' use of personal draws. Thus, the court concluded, there was "abundant fodder in this record for this jury to go either way." Consequently, the court determined that plaintiff did not meet the high standard needed before the court can declare a new trial.

We agree that in these circumstances, except as we note in the next section, there was no "miscarriage of justice under the law." T.L. v. Goldberg, 238 N.J. 218, 230-31 (2019). While there was evidence to support both parties' positions, the jury's verdict in almost all respects did not involve a "manifest

lack of inherently credible evidence to support [its] finding." Risko, 206 N.J. at 521 (quoting Lindenmuth, 296 N.J. Super. at 48).

## B.

That brings us to plaintiff's contention that we must, at a minimum, vacate the jury's verdict as it relates to two payments that defendant concedes she owes to plaintiff. Specifically, plaintiff highlights two expenditures which defendant admitted at trial on cross examination were misallocated to plaintiff as personal expenses: $6,273 for car payments and $4,071.05 for car insurance payments.[3] Defendant on appeal offers no position on these admissions except to state that plaintiff paid off the car loan—the $6,273 amount—without her knowledge because he co-signed for the car and did not want it to adversely affect his credit score. At trial, defendant stated that the $6,273 attribution to plaintiff was "a mistake" as it was her car and her expense. She also testified she "already told" plaintiff that he had "nothing to do with the [car] insurance" and that amount was a mistake as well.

---

[3] We note there are discrepancies in the record as to the exact amount of these payments. Plaintiff's brief represents the car insurance payments total $4,387.20, whereas both defendant's testimony and an accountant's report listed this amount as $4,071.05. Plaintiff's appendix similarly reflects both amounts.

A-0669-23

We are mindful that the objective of our review of a motion for a new trial "is to correct clear error or mistake by the jury." Dolson, 55 N.J. at 6. Here defendant admitted at trial that these specific funds—the car insurance and car loan payments—were improperly attributed to plaintiff. Stated another way, there was no dispute at trial that these funds were wrongly attributed to plaintiff, thereby reducing his share of the profits. See id. at 12 ("It is clearly erroneous for a jury to disregard uncontradicted testimony by the defendant . . . on the issue of liability merely because of disbelief of plaintiff's damage testimony.").

We acknowledge that while these amounts are relatively small when viewed in context with the overall financial claims raised in this case, if the jury's verdict stands, plaintiff will have no ability to recoup these funds since our affirmance of the jury's verdict forecloses any future legal remedy. That would constitute "manifest denial of justice." See Lindenmuth, 296 N.J. Super. at 49 (quoting Thomas v. Toys "R" Us, Inc., 282 N.J. Super. 569, 579 (App. Div. 1995)).

This situation requires us to consider the appropriate remedy for the error. "The scope of the new trial 'depends on the nature of the injustice.'" Anderson v. A.J. Friedman Supply Co., 416 N.J. Super. 46, 69 (App. Div. 2010) (quoting Fertile v. St. Michael's Med. Ctr., 169 N.J. 481, 490 (2001)). Depending on the

13

nature of the error, reviewing courts may direct limited re-trials, for example, where there is a dispute about damages only. See Risko, 206 N.J. at 525. We recognize that a limited re-trial is not the best use of judicial resources. Had plaintiff filed a motion for JNOV, then the disposition options would have been broader. R. 4:40-2. However, as the issue is before us under Rule 4:49-1, it appears that the only dispositional remedy is to generally affirm the trial court's October 6, 2023 order and remand for further proceedings confined to these car-related expenditures.

While defendant agrees that these funds were wrongly attributed to plaintiff, as noted, there is a factual dispute regarding the total monies owed related to the car insurance payments. See note 2. This is not an appropriate situation for us to exercise original jurisdiction under Rule 2:10-5 given the lack of clarity regarding how much credit plaintiff is owed. See Rivera v. Union Cnty. Prosecutor's Off., 250 N.J. 124, 146 (2022) (noting that original jurisdiction "is generally used when the record is adequately developed and no further fact-finding is needed" (quoting State v. Jarbath, 114 N.J. 394, 412 (1989))).

Accordingly, we remand for the trial court to address the error. If the parties cannot agree on the amount of the car insurance payments that were

wrongly attributed to plaintiff, then the court shall convene a new trial limited to determining the amount of those payments. In all other respects, we affirm the denial of plaintiff's motion for JNOV or a new trial.

### III.

We turn next to plaintiff's contention the trial court erred in imposing attorney fees. Specifically, plaintiff argues: (1) defendant had not filed a counterclaim and thus could not be deemed a "prevailing party" under the Operating Agreement; (2) the award was inflated because it included fees related to motions that defendant had not prevailed on; and (3) the award improperly included entries that were vague or indiscernible, thus the reasonableness of those fees could not be determined.

"[A] reviewing court will disturb a trial court's award of counsel fees 'only on the rarest of occasions, and then only because of a clear abuse of discretion.'" Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. 372, 386 (2009) (quoting Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 444 (2001)). Thus, a reviewing court should intervene "[w]here the lower court's determination of fees was based on irrelevant or inappropriate factors, or amounts to a clear error in judgment[.]" Garmeaux v. DNV Concepts, Inc., 448 N.J. Super. 148, 155-56

(App. Div. 2016) (citing <u>Masone v. Levine</u>, 382 N.J. Super. 181, 193 (App. Div. 2005)).

A fee award based on a mistaken application of law is not entitled to any special deference; such issues are reviewed de novo. <u>Brunt v. Bd. of Trs., Police & Firemen's Ret. Sys. in Div. of Pensions & Benefits</u>, 455 N.J Super. 357, 363 (App. Div. 2018). Similarly, the reviewing court must engage in a de novo review of contract interpretation, as this is a question of law. <u>Barila v. Bd. of Educ. of Cliffside Park</u>, 241 N.J. 595, 612 (2020).

When determining the amount of fees awarded, the court "must ascertain the 'lodestar'; that is, the 'number of hours reasonably expended by the successful party's counsel in the litigation, multiplied by a reasonable hourly rate.'" <u>Garmeaux</u>, 448 N.J. Super. at 159 (quoting <u>Litton Indus., Inc.</u>, 200 N.J. at 386). To determine the reasonableness of the fees, the Rules of Professional Conduct require courts to consider:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;

16

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services;

(8) whether the fee is fixed or contingent.

[RPC 1.5(a).]

Turning to the facts in this case, Section 10.5 of the Operating Agreement states as follows:

In the event of any suit or action to enforce or interpret any provision of this Agreement (or that is based on this Agreement), the prevailing party is entitled to recover, in addition to other costs, reasonable attorney fees in connection with the suit, action, or arbitration, and in any appeals. The determination of who is the prevailing party and the amount of reasonable attorney fees to be paid to the prevailing party will be decided by the court or courts, including any appellate courts, in which the matter is tried, heard, or decided.

On August 22, 2023, defendant filed for attorney fees and costs against plaintiff pursuant to the Operating Agreement. Because plaintiff had filed his notice of appeal prior to the resolution of this application we remanded this matter to the trial court to rule on defendant's fee application. On remand, the

trial court granted defendant's request for attorney fees and costs, totaling $119,256.40. The court concluded that pursuant to the Operating Agreement, defendant was the prevailing party in this matter. The court disagreed that defendant's lack of success during her pre-trial motions or plaintiff's success in obtaining discovery changed this assessment. While plaintiff argued that he initiated the litigation in part to access the Viva's financial records, the court said the evidence revealed—and the jury found—that plaintiff always had "full access to the bank account and to . . . credit card statements," which were in his name.

The trial court then reviewed the reasonableness of the fees as the Rules of Professional Conduct requires. It determined that defense counsel's hourly rate was reasonable, considering counsel's experience, his skill, and industry standards. It also found that the billing entries included "a fairly detailed recitation of what hours were expended on what task[,]" and could not constitute "block-billing." The court agreed that the total amount of fees requested was "significant," but said this was reasonable given that counsel had represented defendant for three years. Thus, the court concluded that defendant was entitled to attorney fees as the prevailing party, and granted her the full amount requested, totaling $119,256.40.

## A.

We first address plaintiff's contention that the fee award was improper because defendant was not the prevailing party. He argues that defendant cannot be a prevailing party because she did not file a counterclaim, she was not wholly successful in some of her pre-trial applications, and, at the very least, he successfully litigated discovery to access information to which he was legally entitled and which defendant withheld from him. Specifically, plaintiff asks us to reduce the fee award by $45,451.22, for fees and costs that defendant "incurred relating to issues that she did not prevail on." This includes $6,897 in fees in connection with her unsuccessful motion to dismiss a count from plaintiff's complaint and $33,291.22 connected to discovery. We see no error in the trial court's resolution of this contention.

Generally, when calculating a fee award, the court considers "the reasonable number of hours expended by plaintiff's counsel in the pretrial and trial work." Hansen v. Rite Aid Corp., 253 N.J. 191, 221 (2023). In contending that defendant is not entitled to attorney fees for her unsuccessful pre-trial motions, plaintiff relies upon caselaw that allows the court to reduce fees in proportion to the prevailing party's success on their claims. See Furst v. Einstein Moomjy, Inc., 182 N.J. 1, 23 (2004) ("[A] trial court should decrease the lodestar

if the prevailing party achieved limited success in relation to the relief [they] had sought." (quoting Rendine v. Pantzer, 141 N.J. 292, 336 (1995))). Thus, where a party "has achieved only limited relief in comparison to all of the relief sought, the [trial] court must determine whether the expenditure of counsel's time on the entire litigation was reasonable in relation to the actual relief obtained . . . and, if not, reduce the award proportionately." N. Bergen Rex Transp., Inc. v. Trailer Leasing Co., a Div. of Keller Sys., 158 N.J. 561, 572 (1999) (quoting Singer v. State, 95 N.J. 487, 500 (1984)). "Thus, when a party has succeeded on only some of its claims for relief, the trial court should reduce the lodestar to account for the limited success." Litton Indus., Inc., 200 N.J. at 387 (citing Furst, 182 N.J. at 23). Moreover, where "the same evidence adduced to support a successful claim was also offered on an unsuccessful claim, the court should consider whether it is nevertheless reasonable to award legal fees for the time expended on the unsuccessful claim." Ibid.

Putting aside for a moment the trial error concerning the car payments, we are satisfied that the trial court correctly found that defendant prevailed on all the claims before the jury. Although defendant was unsuccessful in her motion to dismiss count three of plaintiff's complaint for fraud, she ultimately was successful in defeating that claim at trial. Furthermore, while plaintiff expended

considerable funds to facilitate discovery, in the end the jury determined that defendant did not engage in any wrongdoing or withhold information from plaintiff. The court commented that plaintiff always had access to the Viva's accounts.

In sum, we are satisfied, with one caveat, that plaintiff has not demonstrated the trial court abused its discretion in assessing the fee award. That brings us back to the trial errors that were committed with respect to the car payments wrongly attributed to plaintiff. See Section IV. Because the judgment must be corrected, and because defendant did not "prevail" with respect to those wrongly-attributed payments, we deem it appropriate on remand for the trial court to reconsider the attorney fee award. We offer no opinion on whether and to what extent the trial court, in the exercise of its discretion, should modify the attorney fee award to account for the trial error. See Litton Indus., Inc., 200 N.J. at 389 (noting that the trial court is in the "best position" to adjust the attorney fee award on remand).

To the extent we have not specifically addressed any arguments raised by plaintiff, it is because they lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

21

Affirmed in part and reversed and remanded in part for proceedings consistent with this opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-0669-23