Robert A. BENKOSKI, Plaintiff-Appellant-Cross-Respondent,

v.

Mark A. FLOOD and Kathleen M. Flood, Defendants-Respondents-Cross- Appellants.†

Court of Appeals

*No. 98–1972. Oral argument May 24, 1999.—Decided July 14, 1999.*

(Also reported in 599 N.W.2d 885.)

†Petition to review denied.

377

On behalf of the plaintiff-appellant-cross-respondent, there were briefs and oral argument by *David Goluba* of Ripon.

On behalf of the defendants-respondents-cross-appellants, there was a brief and oral argument by *Paul W. Rosenfeldt* of *Edgarton, St. Peter, Petak, Massey & Bullon* of Fond du Lac.

Before Snyder, P.J., Brown and Anderson, JJ.

BROWN, J. This appeal and cross-appeal concern the relationship between the owner of a mobile home park and the owner of four rental mobile home units located in the park. The question presented is whether the owner of the units, Robert A. Benkoski, is a resident of the park for purposes of the statute and the administrative code chapter dealing with mobile homes, even though he does not live in the park. We conclude that with respect to the park owners, Mark A. and Kathleen M. Flood, Benkoski is a resident under the statute and code. As such, the Floods may not require him to remove his units from the park due to a change in ownership.

The following facts are not in dispute. Benkoski rents four mobile home sites in the Floods' mobile home park on which he keeps his mobile homes. He then rents the homes to tenants. Benkoski had already been renting out his mobile homes at the park when the Floods bought an interest in the mobile home park. In 1991, the Floods took over sole ownership of the park. Prior to that, the Floods, their business associates and Benkoski had entered into a written, year-to-year lease. Under the lease, Benkoski could not sublet the sites "unless prior approval has been granted from Lessor." In 1989, after Benkoski informed the Floods that his homes were for sale, the Floods informed Benkoski that "the home[s] will be allowed to remain in the park for this resale only. The new buyers will have to remove the home from the park at the end of their lease."

Benkoski wrote the Floods in July 1991 that their removal policy was "making it difficult for [him] to sell the mobile homes to prospective buyers since you are making them remove the trailers from the park when it is time for them to sell . . . to someone else." Three years later, Benkoski had found a potential buyer for one of

the homes and sent the Floods a completed application for tenancy so that they could approve of the new buyer. The Floods rejected the application, stating that they would "not be processing the application because of our stand on your removal of the rentals from the park as they are sold." Again, in January 1995, Benkoski found potential buyers for one of the mobile homes and submitted an application to the Floods. Again, the Floods rejected the application, this time stating that "[a]s has been our policy in the past when one of your mobile homes comes up for sale it must be removed from the park."

The rejection of these applications prompted Benkoski to file suit against the Floods. He claimed the Floods had violated § 710.15(3)(b) and (4) STATS., which prohibit a mobile home park operator from requiring removal of a mobile home due to the age of the home or a change in ownership or occupancy. Further, Benkoski alleged that the removal requirement constituted a violation of WIS. ADM. CODE § ATCP 125.06(1)(a), which forbids an operator from placing unreasonable restrictions on the sale of a mobile home in the park. Benkoski sought to recover twice his pecuniary loss (in an amount to be determined at the time of the trial), along with his costs and reasonable attorney's fees, pursuant to § 100.20(5), STATS.[1] Finally, Benkoski sought an injunction forbidding the Floods from requiring removal of his homes upon sale. The Floods counterclaimed, alleging that Benkoski had agreed to discontinue subletting the homes when the current tenants left and remove the units from the park as they became vacant. The Floods requested dis-

---

[1] Chapter ATCP 125 was adopted under § 100.20(2), STATS., so a violation of it is grounds for a suit for damages under § 100.20(5). See Note, WIS. ADM. CODE ch. 125.

missal of Benkoski's complaint and an injunction requiring removal of the homes.

Benkoski moved for summary judgment, which the court denied because it found material facts still in dispute. At that stage of the proceedings, the original trial court judge recused himself. When proceedings resumed before the new judge, Benkoski moved for partial summary judgment dismissing the Floods' counterclaim and the Floods moved to dismiss Benkoski's action for failure to state a claim upon which relief may be granted.

The court granted Benkoski's motion and dismissed the Floods' counterclaim. The court found that if indeed there was an agreement that Benkoski remove the units upon sale, then such an agreement, if merely oral, was in violation of § 710.15(1)(a), (1m) and (4), STATS. Those subsections require leases to be in writing and prohibit removal requirements based on change of ownership or occupancy.

In response to the Floods' motion, the court dismissed Benkoski's claims for relief based on WIS. ADM. CODE ch. ATCP 125 and § 100.20(5), STATS. The court found that Benkoski was an operator, not a resident or tenant, as defined in chapters ATCP 125 and 710, STATS. Because "ATCP 125 was intended to protect mobile home dwellers' investment in their homes," and Benkoski did not live in the mobile homes at the park, Benkoski was "not within the class of persons protected" by that chapter. The court declined, however, to dismiss Benkoski's claims for relief "founded solely upon sec. 710.15, Stats." In short, the court ruled that Benkoski could pursue an injunction but not money damages.

Thereafter, the parties entered into a stipulation agreeing that the only issue remaining was Benkoski's

request for declaratory relief, this being that the court find that § 710.15, STATS., applies to the relationship between the Floods and Benkoski and that the Floods "cannot insist upon the removal of [Benkoski's] mobile home from [the park] should said mobile home be transferred." Based on the affidavits and evidence presented, the court concluded that: Benkoski is an operator under § 710.15(1)(d); Benkoski is also a resident under § 710.15(1)(f); § 710.15(3) and (4) apply to the relationship between the Floods and Benkoski due to Benkoski's status as a resident, "regardless of his concurrent status as an operator." The court also vacated any inconsistent language present in its previous order dismissing Benkoski's WIS. ADM. CODE ch. ATCP 125 claims. Specifically, it withdrew "Sec. 710.15(1)(d), Stats." from the sentence in the order declaring that Benkoski was "solely an 'operator' as defined in ATCP 125.01(3) . . . and sec. 710.15(1)(d), Stats." In sum, the court ruled that Benkoski was concurrently a resident and an operator for purposes of § 710.15, but solely an operator under ch. ATCP 125. Because he is not a tenant under ch. ATCP 125, the Floods never violated ch. ATCP 125 and Benkoski cannot pursue a claim for damages pursuant to § 100.20(5), STATS. Benkoski appealed and the Floods cross-appealed.

Before delving into the parties' arguments, we set out the relevant statutory and administrative code provisions. Section 710.15, STATS., sets forth mobile home park regulations. Under paragraph (1)(c), a "mobile home occupant" is "a person who rents a mobile home in a park from an operator." Section 710.15(1)(c). A "resident" is "a person who rents a mobile home site in a park from an operator." Section 710.15(1)(f). An "operator" is "a person engaged in the business of rent-

ing plots of ground or mobile homes in a park to mobile home owners or mobile home occupants." Section 710.15(1)(d). Under subsection (1m), all agreements for rental of mobile homes must be by lease. *See* § 710.15(1m). Finally, under subsection (4), "[a]n operator may not require the removal of a mobile home from a park solely or in any part because the ownership or occupancy of the mobile home has changed or will change." Section 710.15(4).

WISCONSIN ADM. CODE ch. ATCP 125 also regulates mobile home parks. In that chapter, a "tenant" is "any person renting a site from an operator," and an "operator" is "any person engaged in the business of renting sites . . . to tenants." Section ATCP 125.01(3), (9). A "site" is any plot of land rented to accommodate a mobile home used for residential purposes, except for a plot used for the accommodation of a mobile home occupied on a seasonal basis or one that is "[o]wned by the operator and occupied as a residence." Section ATCP 125.01(7). Section ATCP 125.06(1)(a) prohibits an operator from unreasonably restricting the sale of a tenant's mobile home.[2] Finally, § ATCP 125.09(2) forbids an operator from imposing any term or condition he or she knows or reasonably ought to know is in conflict with that chapter or other applicable law.

Benkoski, in his appeal, argues that the court erred in dismissing his § 100.20(5), STATS., claim for relief. He reasons that he is a tenant pursuant to WIS. ADM. CODE § ATCP 125.01(9), since he rents a site from an operator. As such, he is protected by ch. ATCP 125.

---

[2] It is worth noting that § 710.15(4), STATS., prohibiting removal requirements based on age or change in ownership or occupancy, is reprinted in a note immediately following WIS. ADM. CODE § ATCP 125.06(1)(a) in the Wisconsin Administrative Code.

The Floods, by informing him that he would have to remove his homes from the park upon sale, had required removal of the homes at least partly on the basis of a change in ownership or occupancy. This is a violation of § 710.15(4), STATS.; as such, it is an unreasonable restriction on the sale of the homes and therefore a violation of § ATCP 125.06(1)(a). Furthermore, under § ATCP 125.09(2), an operator is prohibited from imposing any term, condition, rule or regulation which the operator knows to be in conflict with ch. ATCP 125 or other law. Because the Floods' actions are in violation of ch. ATCP 125, Benkoski claims that he is entitled to damages under § 100.20(5). Finally, Benkoski asserts that the court erred when it denied his initial motion for summary judgment, as there were no material facts in dispute and the law was clearly on his side.

The Floods respond that Benkoski is not a tenant under ch. ATCP 125, and, even if he were, they have not violated any provision in that chapter. The Floods cite the rule-making history of WIS. ADM. CODE ch. ATCP 125 in support of their argument that the chapter was meant to protect those who own mobile homes and use them as residences, not those who sublet them to others. Furthermore, the Floods claim that reasonable minds could differ as to whether § 710.15, STATS., governs their relationship with Benkoski. Therefore, it was reasonable for them to conclude that it did not. Because their actions were not unreasonable, they were not in violation of § ATCP 125.06(1)(a). Regarding the court's denial of Benkoski's first motion for summary judgment, the Floods argue that Benkoski failed to make even a prima facie case that they had violated § 710.15(3)(b) and (4), as he never alleged that the Floods required removal *because* of a change in owner-

ship. According to the Floods, the key issue in this case is their intent in telling Benkoski to remove the homes. Mark Flood's affidavit presents a lawful reason for requiring removal—they wanted to have their park contain all owner-occupied homes. This reason was never refuted, and so, the Floods argue, the trial court should have granted summary judgment in their favor.

On cross-appeal, the Floods contend that the trial court erred in dismissing their counterclaim. Section 710.15, STATS., does not govern their relationship with Benkoski, they argue, because Benkoski is not a "resident" for purposes of the statute. The legislature intended the term "resident" to embrace only those living in their mobile homes. Therefore, since Benkoski is not protected under the statute, the Floods are not subject to the requirements of that section. Their agreement with Benkoski that he remove the homes upon resale did not need to be included in the lease.

We first address a threshold matter lingering in the parties' arguments. The parties dispute whether Benkoski is an operator under the statute. The trial court found that he was both an operator and a resident. We agree that Benkoski can wear two hats: he is an operator with respect to his tenants, those who sublet the lots and lease the homes from him. We address Benkoski's status in his relationship with the Floods below. Our point here is this: whether Benkoski is an operator in his relationship with those from whom he collects rent is irrelevant to this case. Our concern is the relationship between the Floods and Benkoski, not the relationship between Benkoski and his tenants.

We address the major arguments in this case in three sections. First, we examine the application of § 710.15, STATS., to the case. Second, we look at whether WIS. ADM. CODE ch. ATCP 125 bears upon the

parties' relationship. Third, we discuss the propriety of summary judgment in this case.

*Section 710.15, STATS.*

The application of a statute to a given set of facts is a question of law we review de novo. *See Voss v. City of Middleton,* 162 Wis. 2d 737, 749, 470 N.W.2d 625, 629 (1991). When interpreting a statute, our goal is to further the intent. *See id.* If the statute clearly and unambiguously sets forth that intent, we merely apply the statute to the facts of the case. *See id.* If, on the other hand, the statute is ambiguous, we look beyond its language to its history, object and scope. *See id.* A statute is ambiguous if reasonable minds could disagree on its meaning. *See Hauboldt v. Union Carbide Corp.,* 160 Wis. 2d 662, 684, 467 N.W.2d 508, 517 (1991).

The Floods argue that § 710.15, STATS., does not govern their relationship with Benkoski because Benkoski is not a resident as defined in paragraph (1)(f) of that section. According to the Floods, when the definition of resident is read in conjunction with the definition of mobile home occupant, one must conclude that a " 'resident' is someone who, at minimum, rents a mobile home site but owns the mobile home" on the site. The Floods point to the disjunctive use of the terms mobile home occupant and resident elsewhere in § 710.15 to support this claim. Furthermore, the Floods argue, "common sense tells us that a resident is one who intends to reside." Finally, the Floods claim that to include Benkoski in the class of people meant to be protected by the statute would go against the legislative intent, as the legislature meant to protect only mobile home dwellers.

Benkoski answers the Floods' arguments regarding his status as a resident on two grounds. First, Benkoski urges that the Floods were precluded from challenging the trial court's conclusion that Benkoski was a resident because that decision was compelled by a ruling in another action. Prior to the entry of Judge Peter L. Grimm's order finding Benkoski to be a resident, Judge Dale L. English had made the same finding in an eviction action between Benkoski and the Floods. Because the determination in the eviction action was a valid and final judgment, the Floods were estopped from relitigating that issue. Second, Benkoski argues that he clearly falls within the definition of "resident" because he rents sites in a mobile home park.

We need not address the issue preclusion argument because we agree with Benkoski on the merits: The definition of resident in § 710.15(1)(f), STATS., is clear and unambiguous and includes Benkoski. " 'Resident' means a person who rents a mobile home site in a park from an operator." *Id.* Benkoski rents four sites from the Floods. Therefore, he is a resident.

Even though we have concluded that the statute is clear in its inclusion of Benkoski, we pause to further address some of the Floods' arguments. The Floods interpret the trial court's determination that Benkoski is a resident as a conclusion that "a resident is nothing more than a mobile home owner." The Floods point to the drafting record of § 710.15, STATS., to refute this perceived conclusion and show that residency means more than mere ownership. A proposed version of the statute used the terms "ownership or residency" in place of "ownership or occupancy" in subsections (3) and (4). *See* Senate Substitute Amend. to 1985 S.B. 217, LRB s0120/1. The Floods argue that this disjunc-

tive use of the terms proves that they are not synonymous.

Ultimately, the legislature chose to replace the phrase "ownership or residency" with "ownership or occupancy." The use of the phrase "ownership or occupancy" implies that "ownership" and "occupancy" are two different things. But, if, as the Floods contend, the section is only meant to protect those mobile home owners who choose to dwell in their mobile homes, then why the disjunctive between an owner and an occupant? In § 710.15(3) and (4), STATS., the legislature has prohibited a removal requirement based on any one of three things: the age of the home, who owns the home, and who lives in the home. This shows that the situation where someone lives in a mobile home but does not own it was considered. That is exactly the situation present in this case. As the Floods state in their brief, "common sense tells us that the legislature used the terms 'mobile home occupant' and 'resident' merely to distinguish between *persons who rent the mobile home in which they live* and those who reside in their own home but rent the site upon which it is located." (Emphasis added.) The persons described by the emphasized language are none other than Benkoski's tenants. They are occupants. He is a resident.

Finally, the Floods claim that the drafting record shows that the legislative intent was to protect the investment of those who live in mobile homes, not to protect those who rent them out as a business. The drafting record cannot trump the clear language of the statute. And furthermore, the memo cited by the Floods says that "[t]he right, or lack of right, to resell their homes in place has been the biggest problem testified to . . . by mobile home owners." Correspondence/Memorandum from Dept. of Agricul-

ture, Trade and Consumer Protection to Executive Office, May 21, 1985 at 1. Benkoski is experiencing just this problem. He is a mobile home owner attempting to sell his mobile home in place. He is covered by the statute. If the drafters of § 710.15, STATS., meant to limit protection to owner-occupants they would have said so. Instead, they defined "resident" as a person renting a site. Benkoski fits this definition and so he is protected under § 710.15.

*WISCONSIN ADMINISTRATIVE CODE Chapter ATCP 125*

■

As with statutes, the interpretation of administrative rules is a question of law we review de novo. *See State v. Busch*, 217 Wis. 2d 429, 441, 576 N.W.2d 904, 908 (1998). We do, however, defer to an agency's interpretation of its own rule when that interpretation is reasonable and the agency has expertise in the area. *See State v. Flood*, 195 Wis. 2d 515, 524, 536 N.W.2d 458, 462 (Ct. App. 1995). Here, we are not reviewing an agency decision; rather, we are reviewing the trial court's conclusion that Benkoski is "solely an 'operator' as defined in ATCP 125.01(3)" and thus "not within the class of persons protected by ATCP 125." This conclusion was the basis for the dismissal of Benkoski's claim for damages pursuant to WIS. ADM. CODE §§ ATCP 125.06, .09 and § 100.20(5), STATS.

■

If Benkoski is a "resident" under § 710.15(1)(f), STATS., he must be a "tenant" under WIS. ADM. CODE § ATCP 125.01(9). The code defines a tenant as "any person renting a site from an operator." Section ATCP 125.01(9). Benkoski rents sites from the Floods. He is a tenant for purposes of ch. ATCP 125.

We now turn to Benkoski's allegations that the Floods violated WIS. ADM. CODE §§ ATCP 125.06 and .09. Under those sections, a park operator may not "unreasonably restrict the sale of a tenant's mobile home" or "[i]mpose any term or condition . . . which the operator knows or reasonably ought to know is in conflict with this chapter or other applicable law." Sections ATCP 125.06(1)(a), .09(2). Benkoski argues that the Floods' condition that his home be removed when sold is a violation of § 710.15(4), STATS. Because the condition is contrary to the law, it is per se unreasonable and the Floods ought to have known it was in conflict with the law. The Floods respond that the statute is ambiguous; this means reasonable minds could differ as to its application, and thus it was reasonable for them to conclude that it did not apply to Benkoski. Furthermore, the Floods contend that they did not require removal of Benkoski's homes because they were going to be sold. Rather, they claim, their motivation was to limit the park to owner-occupied homes.

We have already concluded that § 710.15, STATS., is not ambiguous. Benkoski, as a resident, was protected by the section and the Floods reasonably should have known this. Furthermore, § 710.15(4) makes it very clear that an operator may not require removal upon sale. The letters from the Floods and their agent to Benkoski clearly demonstrate that the Floods were imposing such a requirement. They said: "[W]hen one of your mobile homes comes up for sale it must be removed from the park." We say, as a matter of law, that this quoted statement shows that removal was required at least in part "because the ownership or occupancy of the mobile home has changed or will change." Section 710.15(4). Such a removal require-

ment is a violation of § 710.15(4). We agree with Benkoski that a condition of sale that is contrary to the law is per se unreasonable. Therefore, the Floods did violate WIS. ADM. CODE §§ ATCP 125.06 and .09.

## Summary Judgment

Now that we have concluded that the Floods did violate the administrative code, we must decide if Benkoski was entitled to summary judgment. In reviewing a grant or denial of summary judgment, we use the same methodology as the trial court. *See Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987). While we do not review the entire procedure, we note that the moving party has the burden of establishing that there is no dispute regarding any material fact. *See Grams v. Boss,* 97 Wis. 2d 332, 338, 294 N.W.2d 473, 477 (1980). "Doubts as to the existence of a genuine issue of material fact should be resolved against the party moving for summary judgment." *Id.* at 338–39, 294 N.W.2d at 477.

Here, the parties dispute the amount of damages claimed by Benkoski. Benkoski claimed, in his motion for summary judgment, that his pecuniary loss is $7000, the allegedly proposed purchase price in his first attempt to get the Floods to approve a sale. The Floods point out that Benkoski did not produce any evidence to support his damages claim. For example, "Benkoski has not submitted affidavits from the alleged buyers that they intended to purchase the home or had the means to do so." In addition to Benkoski's lack of documentation, we are puzzled as to his claim that he is entitled to the entire proposed purchase price. He still has the mobile home. He should not be able to have his cake and eat it too just because

the Floods violated the code.[3] At the very least, the amount Benkoski was damaged is a material fact, it is in dispute, and thus summary judgment was inappropriate. *Cf. Wisconsin Elec. Power Co. v. California Union Ins. Co.*, 142 Wis. 2d 673, 684, 419 N.W.2d 255, 259 (Ct. App. 1987) (holding summary judgment appropriate where amount of damages was uncontested and no other material fact was in dispute). We therefore affirm the trial court's denial of summary judgment.

## Conclusion

We hold that Benkoski, as a person who rents mobile home sites in a park, is a resident pursuant to § 710.15(1)(f), STATS. He is also a tenant under WIS. ADM. CODE § ATCP 125.01(9). His relationship with the Floods is therefore subject to the regulations set forth in § 710.15 and ch. ATCP 125. The Floods informed Benkoski that his homes would have to be removed when sold. This policy is in violation of § 710.15(4) and §§ ATCP 125.06 and .09. Thus, Benkoski is entitled to damages pursuant to § 100.20(5), STATS. We affirm those parts of the trial court's orders in accord with this opinion and reverse those in conflict. We remand the case for further proceedings to determine the amount of Benkoski's damages.

---

[3] Benkoski cites *Nick v. Toyota Motor Sales, U.S.A., Inc.*, 160 Wis. 2d 373, 466 N.W.2d 215 (Ct. App. 1991), *overruled by Hughes v. Chrysler Motors Corp.*, 197 Wis. 2d 973, 985, 542 N.W.2d 148, 152 (1996) to support his damages claim. *Nick* is a Lemon Law case. Under the Lemon Law, the measure of pecuniary loss is the purchase price of the vehicle. *See Hughes v. Chrysler Motors Corp.*, 197 Wis. 2d 973, 984–85, 542 N.W.2d 148, 152 (1996). But in a Lemon Law case, the car has been returned to the manufacturer.

*By the Court.*—Orders affirmed in part; reversed in part and cause remanded.