COURT OF APPEALS
DECISION
DATED AND FILED

February 16, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1355**

STATE OF WISCONSIN

Cir. Ct. No. 2020CV686

IN COURT OF APPEALS
DISTRICT IV

COLIN HOFFMAN,

PLAINTIFF-APPELLANT,

V.

FRANK GRIBBLE,

DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Dane County: FRANK D. REMINGTON, Judge. *Affirmed.*

Before Blanchard, P.J., Kloppenburg, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Colin Hoffman appeals an order granting summary judgment to Frank Gribble and dismissing Hoffman's claim for violations related to Hoffman's residential lease with Gribble. We affirm the circuit court's order.

## BACKGROUND

¶2 The following material facts are undisputed, except where otherwise noted. Hoffman signed a lease and rented a one-bedroom apartment from Gribble beginning in July 2018. Hoffman vacated the premises in either July or August 2020. Hoffman paid Gribble a $700 security deposit before moving into the apartment. The total amount that Hoffman paid Gribble in connection with the lease was approximately $18,000. On September 4, 2020, Gribble returned $605 of the $700 security deposit to Hoffman, along with a written statement accounting for the amount withheld from the security deposit.

¶3 The lease contained certain conditions, including requiring that Hoffman "obey all lawful orders, rules, and regulations of all governmental authorities." The lease did not contain a "Notice of Domestic Abuse Protections" as required by WIS. STAT. § 704.14 (2021-22) and WIS. ADMIN. CODE § ATCP 134.08(10) (Nov. 2021) (the "domestic abuse protection notice").[1] Pursuant to § ATCP 134.08(10), a lease is "void and unenforceable" if it "[a]llows the landlord to terminate the tenancy of a tenant for a crime committed in relation to the rental property and the rental agreement does not include the notice required under [§] 704.14."

---

[1] The text of WIS. STAT. § 704.14 is set forth in note 4 of this opinion. All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted. All references to WIS. ADMIN. CODE ch. ATCP 134 are to the November 2021 register date unless otherwise indicated.

¶4    In March 2020, while still residing at Gribble's rental property pursuant to the lease, Hoffman filed a class action complaint against Gribble on behalf of himself and other tenants residing at Gribble's properties. The complaint was brought pursuant WIS. STAT. § 100.20(1) and (5) and alleged that Gribble's lease constituted an unfair trade practice in violation of WIS. ADMIN. CODE § ATCP 134.08 because it allowed Gribble to terminate the tenancy of a tenant for a crime committed in relation to the rental property but did not include the domestic abuse protection notice required by WIS. STAT. § 704.14. Hoffman sought damages as provided for in § 100.20(5). Hoffman did not experience domestic violence during the term of the lease.

¶5    The circuit court held a hearing on Hoffman's motion for class certification. The court denied the motion for class certification without prejudice and scheduled the case for summary judgment proceedings.[2] Hoffman filed a motion for partial summary judgment, arguing that (1) Gribble's lease violated the law in failing to include the domestic abuse protection notice, and (2) Hoffman is entitled to damages of double the total amount he paid to Gribble in connection with the lease. Gribble filed a response, arguing that he is entitled to summary judgment and that Hoffman's complaint should be dismissed because, among other things, Hoffman had not shown a pecuniary loss caused by Gribble's failure to include the domestic abuse protection notice in the lease.

¶6    At a subsequent summary judgment hearing, Gribble conceded that the lease did not contain the domestic abuse protection notice required by law. As a result, the court stated that it was granting partial summary judgment to Hoffman

---

[2] Hoffman does not appeal denial of the class certification.

in that the court declared the lease illegal.[3] Thus, the only issues remaining were whether Hoffman is entitled to damages, and if so, how they should be calculated.

¶7    The circuit court issued a written decision concluding that, although the lease violated the pertinent statutory and administrative code provisions, Hoffman failed to show he incurred a pecuniary loss as a result of the violation and therefore is not entitled to damages under WIS. STAT. § 100.20(5). Accordingly, the court denied Hoffman's motion for partial summary judgment, granted summary judgment to Gribble, and dismissed Hoffman's claim.

¶8    Following the circuit court's decision, Hoffman filed a motion for reconsideration, requesting that the court address the arguments based on principles of rescission and restitution that Hoffman made in his summary judgment motion. The court issued an amended decision concluding that Hoffman is not entitled to damages based on rescission and restitution principles for the same reason he is not entitled to damages under WIS. STAT. § 100.20(5): he did not show that he incurred a pecuniary loss resulting from Gribble's failure to include the domestic abuse protection notice in the lease. Accordingly, the court reaffirmed its grant of summary judgment in favor of Gribble. Hoffman appeals.

---

[3] Although it does not affect our decision in this case, we note that Gribble's counsel represented at the hearing that, beginning in 2020, Gribble changed his leases to add the domestic abuse protection notice.

# DISCUSSION

*I. Applicable Standards of Review.*

¶9    We review the circuit court's decision to grant summary judgment de novo. ***Snyder v. Badgerland Mobile Homes, Inc.***, 2003 WI App 49, ¶7, 260 Wis. 2d 770, 659 N.W.2d 887.  Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  WIS. STAT. § 802.08(2).  Additionally, statutory construction and the construction of administrative rules or regulations both present questions of law.  ***Moonlight v. Boyce***, 125 Wis. 2d 298, 303, 372 N.W.2d 479 (Ct. App. 1985).  Accordingly, this court owes no deference to the circuit court's construction of statutes or administrative rules and regulations.  ***Id***.

*II. Hoffman Fails to Show That He Suffered a "Pecuniary Loss Because of a Violation" Under WIS. STAT. § 100.20(5).*

¶10    As stated, WIS. STAT. § 704.14 requires residential rental agreements to include a "Notice of Domestic Abuse Protections," which delineates various protections provided to tenants who are victims of domestic abuse, sexual assault, or stalking.[4]  It is undisputed that Gribble failed to include this notice in the lease

---

[4] WISCONSIN STAT. § 704.14 provides:

> **Notice of domestic abuse protections.** A residential rental agreement shall include the following notice in the agreement or in an addendum to the agreement:

**NOTICE OF DOMESTIC ABUSE PROTECTIONS**

**(1)** As provided in section 106.50(5m)(dm) of the Wisconsin statutes, a tenant has a defense to an eviction action if the tenant can prove that the landlord knew, or should have known, the tenant is a victim of domestic abuse, sexual assault, or stalking and that the eviction action is based on

(continued)

5

with Hoffman. It is also undisputed that, by failing to include this notice, Hoffman violated WIS. ADMIN. CODE § ATCP 134.08, which describes prohibited rental agreement provisions, the inclusion of which renders a rental agreement void and unenforceable. Pertinent here, § ATCP 134.08(10) states:

> **Prohibited rental agreement provisions — rental agreement that contains certain provisions is void.** Notwithstanding s. 704.02, Stats., a rental agreement is void and unenforceable if it does any of the following:
>
> ….
>
> **(10)** Allows the landlord to terminate the tenancy of a tenant for a crime committed in relation to the rental property and the rental agreement does not include the notice required under s. 704.14, Stats.

---

> conduct related to domestic abuse, sexual assault, or stalking committed by either of the following:
>
> **(a)** A person who was not the tenant's invited guest.
>
> **(b)** A person who was the tenant's invited guest, but the tenant has done either of the following:
>
>> **1.** Sought an injunction barring the person from the premises.
>>
>> **2.** Provided a written statement to the landlord stating that the person will no longer be an invited guest of the tenant and the tenant has not subsequently invited the person to be the tenant's guest.
>
> **(2)** A tenant who is a victim of domestic abuse, sexual assault, or stalking may have the right to terminate the rental agreement in certain limited situations, as provided in section 704.16 of the Wisconsin statutes. If the tenant has safety concerns, the tenant should contact a local victim service provider or law enforcement agency.
>
> **(3)** A tenant is advised that this notice is only a summary of the tenant's rights and the specific language of the statutes governs in all instances.

In addition, WIS. STAT. § 100.20(1) prohibits "unfair methods of competition" and "unfair trade practices" in business, which include the methods and practices prohibited by ch. ATCP 134. *See* § 100.20 (1), (2)(a); § ATCP 134.01. Thus, because the lease allowed Gribble to terminate Hoffman's lease for a crime committed in relation to the rental property but did not include the domestic abuse protection notice required under § 704.14, Gribble's lease violated § 704.14, § 100.20, and § ATCP 134.08(10). The only issue remaining on appeal is whether Hoffman is entitled to damages.

¶11 Hoffman argues that he is entitled to damages under WIS. STAT. § 100.20(5). Section 100.20(5) provides that "[a]ny person suffering pecuniary loss because of a violation by any other person of … any order issued under this section may sue for damages … and shall recover twice the amount of such pecuniary loss, together with costs, including a reasonable attorney fee." The language in § 100.20(5) "provides a private remedy for consumers who fall victim to the unfair methods of competition and trade practices prohibited by, *inter alia*, general orders of the Department of Agriculture, Trade and Consumer Protection [DATCP] promulgated under § 100.20(2)." *Kaskin v. John Lynch Chevrolet-Pontiac Sales, Inc.*, 2009 WI App 65, ¶9, 318 Wis. 2d 802, 767 N.W.2d 394. "In other words, § 100.20(5) 'supplies the teeth' to the DATCP orders." *Id.* (quoted source omitted). As indicated, such "orders" include the prohibited rental practices set forth in WIS. ADMIN. CODE § ATCP 134.08. *See* § 100.20(2); § ATCP 134.01; *Baierl v. McTaggart*, 2001 WI 107, ¶23, 245 Wis. 2d 632, 629 N.W.2d 277.

¶12 This appeal requires us to interpret the meaning of the phrase "pecuniary loss because of a violation," as used in WIS. STAT. § 100.20(5). "[S]tatutory interpretation 'begins with the language of the statute. If the meaning

of the statute is plain, we ordinarily stop the inquiry.'" ***State ex rel. Kalal v. Circuit Ct. for Dane Cnty.***, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (quoted source omitted). "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially defined words or phrases are given their technical or special definitional meaning." ***Id.***; *see also* WIS. STAT. § 990.01(1).

¶13     This court has previously concluded that WIS. STAT. § 100.20(5) is unambiguous. ***Kaskin***, 318 Wis. 2d 802, ¶14. Interpreting this statutory provision, this court has also stated that "a party asserting a pecuniary loss for the purposes of WIS. STAT. § 100.20(5) must show that there is a causal connection between a prohibited trade practice … and the damage incurred." ***Grand View Windows, Inc., v. Brandt***, 2013 WI App 95, ¶21, 349 Wis. 2d 759, 837 N.W.2d 611; *see also* ***Paulik v. Coombs***, 120 Wis. 2d 431, 436-37, 355 N.W.2d 357 (Ct. App. 1984) ("Under [§] 100.20(5), a person who suffers damages *because of* a violation of the promulgated regulations, including Wis. Adm. Code ch. Ag 134, has a right to recover twice the amount of pecuniary loss, together with costs, including reasonable attorneys fees.") (emphasis added); ***Kaskin***, 318 Wis. 2d 802, ¶14 ("We have no quarrel with the assertion that a violation of the code must 'cause' a pecuniary loss to the consumer. In fact, that is exactly what the statute and the code mean to say.").

¶14     Hoffman argues that he incurred a "pecuniary loss" in the amount of all of the rental and other payments (including his security deposit) that he made to Gribble over the two-year course of the lease—approximately $18,000. The circuit court rejected this argument on the ground that Hoffman failed to show that his alleged pecuniary loss was "because of a violation," as required under the plain

language of WIS. STAT. § 100.20(5). For the reasons that follow, we agree with the circuit court.

¶15 Hoffman fails to show that he can establish any "causal connection" between Gribble's failure to include the domestic abuse protection notice in the lease and Hoffman's payment of rent, security deposit, or any other fees. *See Grand View Windows*, 349 Wis. 2d 759, ¶21. Because Hoffman develops no argument with respect to any fees aside from rent or the security deposit, we decline to consider these other fees. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (we need not address undeveloped arguments). Regarding the $700 security deposit, Hoffman's brief-in-chief largely ignores the fact that, with the exception of $95, Gribble returned it. He makes no argument that the $95 was improperly withheld. His only argument as to a "loss" involving the security deposit is made in his reply, in which he compares his situation to that in *Baierl*, 245 Wis. 2d 632, a case that he describes as standing for the proposition that "because the lease was void, there was no basis for the lessor to receive or retain the deposit, and so it was doubled." Hoffman continues:

> The lease here is similarly void, and Gribble received and held onto Hoffman's deposit for 24 months *because of* the void lease. Even though it was eventually returned, Hoffman suffered the pecuniary loss of his deposit for 24 months. Allowing Gribble to profit from the interest he could earn on illegally obtained security deposits, and not recognizing that Hoffman suffered a loss of his security deposit the moment he paid it pursuant to an illegal lease, is where the [circuit] court erred.

Hoffman likewise relies on *Baierl* (and on other cases discussed below) for his argument that he is entitled to recover damages for the rent he paid over the course of the lease. Hoffman's reliance on *Baierl* is misplaced.

¶16    In ***Baierl***, the tenants vacated an apartment prior to the expiration of the lease term and instructed the landlord to deduct an amount equaling one month's rent from the security deposit.  Unable to re-rent the apartment, the landlord not only deducted amounts for one month's rent and for (uncontested) damages, but also withheld the remainder of the deposit because of the landlord's inability to re-rent.  ***Id.***, ¶5.  The landlord also brought an action to collect damages for lost rent under the lease.  ***Id.***, ¶6.  The tenants counterclaimed and sought damages under WIS. STAT. § 100.20(5), arguing that the lease was void and unenforceable because it included a provision in violation of WIS. ADMIN. CODE § ATCP 134.08(3) requiring the tenants to pay the landlord's attorney's fees for any legal action brought by the landlord to enforce the lease.  ***Id.***, ¶7.  On appeal, our supreme court framed the issue as involving "the enforceability of the lease by [the landlord] in light of the intent underlying the regulation at issue."  ***Id.***, ¶20. The court concluded that the landlord could not enforce the lease and it affirmed the circuit court's award of damages to the tenants "in the amount of the security deposit remaining after deduction of the [month of] rent and other uncontested deductions," with that remaining amount doubled pursuant to § 100.20(5).  ***Id.***, ¶¶8, 40.

¶17    ***Baierl*** is not on point for several reasons.  First, this appeal involves an action brought by Hoffman, not an enforcement action by Gribble.  Second, unlike Hoffman, the tenants in ***Baierl*** did not claim, nor did our supreme court conclude, that because of the violation of WIS. ADMIN. CODE § ATCP 134.08, the tenants were entitled to recover all of the rent paid over the course of their lease. Nor was there any claim by the tenants, much less a holding by the court, that the tenants were entitled to receive damages for a security deposit amount that was returned or even for all of the security deposit they had paid that had not been

returned. As explained above, the holding in **Baierl** was much more limited—namely, that the landlord could not enforce the lease and, therefore, could not retain the part of the security deposit or seek additional damages for lost rent as a result of the tenants' early termination of the lease and the landlord's inability to re-rent the premises. Third, unlike the tenants in **Baierl**, Hoffman is seeking to recover all of the rent he paid, and all of his security deposit even though most of the security deposit was returned to him and he does not separately contest the amount that was not returned.

¶18 In addition, as the circuit court in this case aptly observed, the nature of the administrative code violation in **Baierl** was central to our supreme court's determination. The **Baierl** court noted that the provision at issue, WIS. ADMIN. CODE § ATCP 134.08(3), was "intended not only to prevent the extraction of the concession of reimbursed attorney fees and costs from tenants by landlords, but also to prevent the chilling effect that the inclusion of a clause claiming to require the payment of attorneys fees and costs has on a tenant's assertion of legal rights." **Id.**, ¶30. The court was persuaded by the likelihood that "tenants who read such a clause in a residential lease will forgo pursuing their rights under the lease out of fear that they will be forced to bear the landlord's litigation expenses." **Id.** The court noted that enforcement of a lease containing such a provision would be contrary to the legislative purpose of WIS. STAT. § 100.20(5), which "encourages private litigation by tenants to enforce their legal rights through the attorneys fees and double damages provisions of WIS. STAT. § 100.20(5)." **Id.**, ¶31. Enforcement would also undermine the ability of tenants to "serve as 'private attorneys generals,' enforcing the tenant rights preserved under the administrative code." **Id.** (quoted source omitted). The court concluded: "Having examined the subject matter, history, and object of § ATCP 134.08(3) to determine the intent underlying

the regulation, we conclude that enforcement of a lease containing the prohibited provision would not only fail to advance the goals of § ATCP 134.08(3), but would undermine them entirely." *Id.*, ¶33.

¶19 Unlike the lease provision in *Baierl*, the lease provision at issue here did not undermine Hoffman's ability to enforce his own or others' rights under the lease. As the circuit court correctly noted in this case, the absence of the domestic abuse protection notice here "did not inhibit Hoffman's ability to bring a suit under [WIS. ADMIN. CODE §] ATCP 134.08 because it does not pose the same barrier as the allocation of attorney's fees" in *Baierl*.

¶20 Other cases upon which Hoffman relies are likewise inapposite and, contrary to Hoffman's assertions, do not create what he contends is a general "rule that a consumer's pecuniary loss equals all payments made while subjected to an unfair trade practice," even in the absence of any causal connection between the violation and the loss.

¶21 Hoffman relies heavily on *Kaskin*, 318 Wis. 2d 802, in which we examined WIS. ADMIN. CODE § ATCP 132.09(1) and (4) (Oct. 2004), provisions that prohibit automobile repair shops from demanding or receiving payment for unauthorized repairs. *Kaskin*, 318 Wis. 2d 802, ¶1. The repair shop charged Kaskin almost $5,000 in unauthorized truck repairs when Kaskin expected the repairs to be made under warranty. *Id.*, ¶¶5-6. When Kaskin protested, the repair shop would not give him back his truck unless he paid, so Kaskin paid. *Id.*, ¶5. Kaskin filed an action under WIS. STAT. § 100.20(5), claiming that he never authorized the nonwarranty repairs. *Id.*, ¶6. Noting that Kaskin's appeal "require[d] us to interpret the meaning of 'pecuniary loss because of a violation' as used in ... § 100.20(5)," we concluded that consistent with the "unambiguous"

12

language of § 100.20(5) and § ATCP 132.09 (Oct. 2004), "the pecuniary loss is precisely the amount the consumer paid for unauthorized repairs." ***Id.***, ¶14. Quoting a prior decision, we reiterated that § ATCP 132.09 (Oct. 2004) "'was promulgated to prevent shops from proceeding with repairs unless they have received permission to do so.'" ***Id.***, ¶16 (quoting ***Huff & Morse, Inc., v. Riordon***, 118 Wis. 2d 1, 9, 345 N.W.2d 504 (Ct. App. 1984)). We further observed that "by requiring shops to receive permission from the consumer to perform repairs at a certain price, the code was ensuring that consumers have the power to choose whether to have the repair work performed, in the manner and price suggested by the repair shop, or seek other options." ***Kaskin***, 318 Wis. 2d 802, ¶16. In other words, "the code promulgated a concept of 'informed consent' for the consumer." ***Id.*** Thus, we concluded that "when a motor vehicle repair shop receives money from a customer for repairs that the customer did not authorize, or at a price not authorized, the customer's pecuniary loss is the entire amount of the unauthorized charges that the customer paid to the motor vehicle repair shop." ***Id.***, ¶24.

¶22 As is evident from ***Kaskin***, there must be a causal nexus between the amounts paid and the violation. ***Kaskin*** does not support Hoffman's strict liability interpretation, under which as Hoffman puts it, "the consumer's pecuniary loss is all payments made while subjected to an unfair trade practice," regardless of how disconnected the violation and the payments are. In fact, ***Kaskin*** explicitly rejects this expansive interpretation in which a violation always results in a pecuniary loss:

> We acknowledge that not every violation of WIS. ADMIN. CODE ch. ATCP 132 amounts to the repairs being unauthorized by the customer. In ***Huff & Morse***, we explained that WIS. STAT. § 100.20(5) does not prohibit a motor vehicle repair shop from collecting or receiving payment for repairs that have not been authorized by the exact requirements of the code. Instead, a customer finding a violation of the written estimate requirement has not

> suffered a pecuniary loss if the customer admits to authorizing to the repairs.

*Id.*, ¶24 n.6. (citations omitted). As the circuit court in this case explained, Hoffman's interpretation "would allow every tenant to recover all of their rent, security deposit, and other fees even if the tenant admitted to agreeing to the payment terms of an illegal lease, as discouraged by *Huff & Morse*."

¶23 The required causal nexus is evident in other cases upon which Hoffman relies. *See **Moonlight***, 125 Wis. 2d at 305-06 (when landlord violated administrative code provision by withholding tenant's security deposit without providing tenant with written statement of damages within 21 days, tenant's pecuniary loss under WIS. STAT. § 100.20(5) was the amount of the security deposit withheld); ***Pierce v. Norwick***, 202 Wis. 2d 587, 591-96, 550 N.W.2d 587 (Ct. App. 1996) (when landlord violated administrative code provision by unlawfully withholding a security deposit based on false representation, the pecuniary loss under § 100.20(5) was the amount that remains of the security deposit after an offset for the landlord's actual damages); ***Pliss v. Peppertree Resort Villas, Inc.***, 2003 WI App 102, ¶21, 264 Wis. 2d 735, 663 N.W.2d 851 (when purchasers "were induced into buying a time share because of the referral selling plan" that violated an administrative code provision, the "pecuniary loss" under § 100.20(5) was "the money paid for the product that the consumer[s] [were] improperly induced into buying due, in part or in whole, to the referral selling plan").

¶24 Unlike all of the cases upon which Hoffman relies, in which there is a causal relationship between the pecuniary loss and the violation, here, Hoffman has not shown a pecuniary loss "because of a violation" as required by the plain and unambiguous language of WIS. STAT. § 100.20(5). Therefore, he cannot seek damages under this provision. Accordingly, the circuit court properly denied

Hoffman's motion for summary judgment and properly granted summary judgment to Gribble on this issue.[5]

### III. Hoffman Forfeited His Arguments Based on Rescission and Restitution.

¶25 Hoffman argues that, under common law doctrines, he is entitled to rescission and restitution because "Gribble made a material misrepresentation when he represented the lease as a legally valid agreement" and "because Gribble subjected him to an illegal lease contract." Hoffman contends that he should be awarded restitution in the amount of all the payments he made to Gribble under the lease.

¶26 In considering this argument on Hoffman's motion for reconsideration, the circuit court concluded that Hoffman is not entitled to restitution for the same reason he is not entitled to damages under WIS. STAT. § 100.20(5): he did not show that he suffered a pecuniary loss because of Gribble's failure to include the domestic abuse protection notice in the lease. On appeal, Gribble advances an additional ground for rejecting Hoffman's arguments. He argues that Hoffman's complaint alleged only one cause of action—violations of statutory and administrative code provisions for failing to include the domestic

---

[5] In light of our conclusion that Hoffman cannot establish he is entitled to damages under WIS. STAT. § 100.20(5), we need not address the parties' arguments regarding Gribble's ability to offset damages through *quantum meruit*.

Hoffman also makes an argument that "[n]ominal damages may also be an appropriate remedy" to "effectuate the purpose of the law." Presumably, "the law" he refers to is WIS. STAT. § 100.20, given that he also seeks attorney fees, as provided for in § 100.20(5). But rather than "effectuate the purpose of the law," adoption of Hoffman's position would require us to disregard the law because, as we have explained, under a plain language interpretation of § 100.20(5), recovery of damages is permitted only when there is a pecuniary loss "because of" a violation of the administrative code. Here, because we have concluded that Hoffman has failed to establish such a nexus, he is not entitled to damages, nominal or otherwise, under § 100.20(5).

abuse protection notice—and that Hoffman therefore cannot now allege claims based on misrepresentation or other forms of illegality not raised in his complaint. *See Hoida, Inc. v. M&I Midstate Bank*, 2006 WI 69, ¶18 n.11, 291 Wis. 2d 283, 717 N.W.2d 17 (both circuit court and appellate court decline to consider misrepresentation issue because "misrepresentation was not pleaded"); *Young v. Welytok*, 2011 WI App 59, ¶27, 333 Wis. 2d 140, 798 N.W.2d 881 (because party "did not plead a bad faith claim," appellate court "will not consider it"). Because we agree with Gribble's position, we affirm the circuit court's decision on that ground. *See Vanstone v. Town of Delafield*, 191 Wis. 2d 586, 595, 530 N.W.2d 16 (Ct. App. 1995) (on appeal, we may affirm on different grounds than those relied on by the circuit court).

¶27 As stated, Hoffman's cause of action was based on the statutory and administrative code provisions related to failure to include the domestic abuse protection notice. Thus, the cases he cites in his brief-in-chief to support his misrepresentation argument are inapplicable because they involve actions based on complaints that alleged fraud or misrepresentation. *See Schnuth v. Harrison*, 44 Wis. 2d 326, 330-31, 171 N.W.2d 370 (1969) (complaint sought rescission and restitution based on claim that defendant fraudulently induced plaintiff into entering contract by making false representations); *Head & Seemann, Inc. v. Gregg*, 104 Wis. 2d 156, 158, 311 N.W.2d 667 (Ct. App. 1981), *aff'd and adopted*, 107 Wis. 2d 126, 318 N.W.2d 381 (1982) (claim alleging fraud and breach of contract).

¶28 In his reply brief, Hoffman argues that, even though his complaint alleged "a single cause of action," that does not limit the "kind of relief" to which he is entitled. He cites a 1925 Yale Law Journal article and *Benkoski v. Flood*, 229 Wis. 2d 377, 393, 599 N.W.2d 885 (Ct. App. 1999), which, according to

Hoffman, support his position that "[w]ithin [a] single cause of action, a court can apply many legal bases to determine the appropriate relief." He states that "the facts regarding Gribble's misrepresentation fall squarely within Hoffman's cause of action" because "Gribble represented that the lease was legally valid" when "[i]n reality, the lease was not valid because it violated the Wisconsin Administrative Code." (Emphasis omitted.) Therefore, according to Hoffman, "Gribble's misrepresentation forms one possible basis for calculating relief and it arises directly from Gribble's violation of the Administrative Code."

¶29　We reject this as a circular argument that is unsupported by logic or the authority Hoffman cites. Hoffman provides no authority for the proposition that misrepresentation is a remedy rather than a cause of action. He likewise does not reply in any way to Gribble's arguments, predicated on the civil jury instructions, that the elements of misrepresentation and the elements of the violation alleged in Hoffman's complaint are not the same. Indeed, contrary to Hoffman's position, and as Gribble points out, a claim alleging a violation and damages under WIS. STAT. § 100.20 is a distinct statutory cause of action, not simply a mechanism for additional relief under common law claims for misrepresentation or breach of contract. *See Stuart v. Weisflog's Showroom Gallery, Inc.*, 2006 WI App 109, ¶33, 293 Wis. 2d 668, 721 N.W.2d 127, *aff'd*, 2008 WI 22, ¶33, 308 Wis. 2d 103, 746 N.W.2d 762 ("Section 100.20, together with [WIS. ADMIN. CODE ch.] ATCP 110, give no indication that the legislature intended to simply add a remedy to common law misrepresentation claims or breach of contract claims.").

¶30　We similarly reject Hoffman's argument that, because the lease is illegal, Hoffman is entitled to damages under criteria other than that set forth in WIS. STAT. § 100.20(5). As Hoffman himself agrees, he brought a single cause of

17

action alleging a violation of the domestic abuse protection notice requirement. Recovery for such a violation is provided for in § 100.20(5), which delineates a specific requirement that the pecuniary loss be "caused by" the violation. Thus, under a plain language interpretation of this statute, and contrary to Hoffman's assertion, "illegality" in itself is insufficient to recover damages. We are not persuaded by Hoffman's unsupported attempt to establish an end-run around the statutory requirements of § 100.20(5).[6]

¶31 In sum, Hoffman makes no cogent argument supported in law as to why he is entitled to damages based on a claim and theory not alleged in his complaint.

## CONCLUSION

¶32 For the reasons stated, we affirm the circuit court order denying summary judgment to Hoffman, granting summary judgment to Gribble, and dismissing Hoffman's complaint.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[6] We further observe that Hoffman's reliance on *Hiltpold v. T-Shirts Plus, Inc.*, 98 Wis. 2d 711, 298 N.W.2d 217 (Ct. App. 1980), is misplaced. *Hiltpold* involved a rescission action under the Wisconsin Franchise Investment Law, WIS. STAT. ch. 553, which, as noted by the *Hiltpold* court, includes specific provisions allowing for rescission and damages. *See id.* at 714 & n.2; WIS. STAT. § 553.51(1), (2).